(28 Misc. Rep. 151.)

### TYROLER v. GUMMERSBACH.[1]

(Supreme Court, Appellate Term. June 28, 1899.)

1. JURISDICTION—RECORD—APPEAL.
　　The jurisdiction of a court of inferior and limited jurisdiction to enter a a judgment must affirmatively appear from the record, and the question as to whether the court had jurisdiction may be raised for the first time on appeal.

2. GREATER NEW YORK CHARTER—COURTS.
　　Under Const. 1894, art. 6, § 18, which provides that the legislature may establish inferior local courts, but that their jurisdiction should not exceed that conferred on county courts by that article; and section 14, which provides that the legislature may enlarge or diminish the jurisdiction of the county courts, but that it cannot extend the court's jurisdiction to persons not residents of the county,—Greater New York Charter, § 1351, which continued, consolidated, and reorganized the district courts of the city of New York and the justices' courts of the city of Brooklyn under the title of the "Municipal Court of the City of New York," is, so

[1] For concurring opinion, see 59 N. Y. Supp. 319.

far as it attempted to give a district court of such municipal court jurisdiction over or against a person not a resident of the county in which it is located, unconstitutional.

Appeal from municipal court, borough of Manhattan, Ninth district.

Action by George Tyroler against Charles J. Gummersbach. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Julius Lehman, for respondent.

FREEDMAN, P. J. The action was brought by the plaintiff to recover from the defendant a certain sum claimed to be due to plaintiff as commissions for the sale of railroad tickets for the defendant, who was Eastern passenger agent of the Delaware, Lackawanna & Western Railroad. The action was brought in the municipal court of the city of New York, borough of Manhattan, Ninth district. Upon the trial the plaintiff had judgment, and the defendant appealed to this court. Upon this appeal the defendant asks for a reversal of the judgment on the ground that it nowhere appears in the record that he is a resident within the territorial jurisdiction of the said municipal court, that such residence is a jurisdictional fact, and that the absence of such fact from the record is fatal to the judgment. No such question as to the jurisdiction of the court having been raised below, it remains to be seen whether the question can be raised for the first time on appeal.

The municipal court of the city of New York has been created by the legislature by chapter 378 of the Laws of 1897. It is an inferior local court of civil jurisdiction, within the meaning of section 18, art. 6, of the constitution. The general rule applicable to every inferior local court is that the record of its judgment must affirmatively show the existence of every jurisdictional fact, and that, unless the contrary appears by the record, the presumption is that the case was without jurisdiction. The authorities upon this point are too numerous to be referred to in detail. The two leading cases bearing directly upon the question now under consideration are Frees v. Ford and Gilbert v. York.

In Frees v. Ford, 6 N. Y. 176, and another case against the same defendant, the action in each case was brought in a county court, in assumpsit, and the declaration contained no allegation as to the residence of the defendant. The objection was taken by demurrer. The court of appeals held:

"This county court is not a court of general jurisdiction, as was the old court of common pleas. On the contrary, it is a new court, with a limited, statutory jurisdiction. To all such courts the rule universally applies that their jurisdiction must appear upon the record. Turner v. Bank, 4 Dall. 8. In these cases it does not appear upon the records that the defendants were, at the time when the suits were commenced, residents of the county of Columbia. This being a jurisdictional fact, and not averred upon the records, the judgment must be reversed."

In Gilbert v. York, 111 N. Y. 544, 19 N. E. 268, the action was brought in a county court upon a money demand. The complaint

did not allege that the defendants were residents of the county, and the defendant demurred. They had judgment upon the demurrer in the county court, and the judgment was affirmed by the general term of the supreme court. 44 Hun, 625. In affirming that judgment in December, 1888, the court of appeals said:

"When we recur to the principle upon which the validity of judgments of courts of limited or inferior jurisdiction is determined, we think it may fairly be held that the sections of the Code referred to [sections 481, 488, and 498] do not affect the rule declared in Frees v. Ford. In Peacock v. Bell, 1 Saund. 73, it is said that nothing shall be intended without the jurisdiction of a superior court but that which specially appears to be so, and, on the contrary, nothing shall be intended to be within the jurisdiction of an inferior court but that which is so expressly alleged. This statement of the rule has been frequently approved. The rule has been applied in many cases in the supreme court of the United States to test the validity of judgments rendered in the circuit courts of the United States. * * * It has been uniformly held that the record of a judgment of a circuit court must affirmatively show the existence of the jurisdictional fact, and that, unless the contrary appears by the record, the presumption is that the case was without its jurisdiction; and it is further held that the question may be raised for the first time on error, and if, on examination, it is found that the record is silent as to the jurisdictional fact, the judgment will be reversed. Turner y. Bank, 4 Dall. 8; Robertson v. Cease, 97 U. S. 646; Grace v. Insurance Co., 109 U. S. 283, 3 Sup. Ct. 207; Insurance Co. v. Rhoads, 119 U. S. 237, 7 Sup. Ct. 193. It was upon this principle that the case of Frees v. Ford was decided. We are not aware of any case in this state which controverts the general rule that, in a direct proceeding to review a judgment of a court of limited and inferior jurisdiction, the record must show affirmatively that the court had jurisdiction, or else the judgment will be set aside. Frees v. Ford is an authority that the presumption that the inferior court is without jurisdiction when the jurisdictional facts are not alleged in the complaint prevails on demurrer. * * * The argument derived from the rules of pleading established by the Code does not satisfy us that the legislature intended to abrogate the presumption to which we have adverted, nor do we think that the fact that the jurisdiction of the county courts, of common-law actions like the present one, is now prescribed in the constitution itself, and is not dependent upon the statute, takes the case out of its operation. They are still courts of limited jurisdiction, within the case of Frees v. Ford."

These authorities amply sustain the contention of the defendant and appellant, provided the jurisdiction of the municipal court, Ninth district, in the case at bar, depended upon the fact of the defendant's residence within the territorial jurisdiction of the court. At the time of the passage of chapter 378 of the Laws of 1897, known as the "Greater New York Charter," there were district courts in the old city of New York, and also justices' courts in Brooklyn and Long Island City and in Richmond and Queens counties. By section 1350 of the said charter the justices' courts and the office of justice of the peace in the cities of Brooklyn and Long Island City were abolished. By section 1351 the district courts of the city of New York and the justices' courts of the First, Second, and Third districts of the city of Brooklyn were continued, consolidated, and reorganized under the name of "The Municipal Court of the City of New York"; and it was thereby provided that:

"Said court shall be a local civil court within the city of New York as constituted by this act, and shall not be a court of record or have equity jurisdiction, but shall have the jurisdiction, powers, duties and organization hereinafter prescribed."

By section 1352 provision was made for the continuance in office of certain justices as justices of said municipal court, for the election of their successors, and for the appointment by the mayor of seven additional justices of said municipal court in certain districts of the borough of Brooklyn, the borough of Queens, and the borough of Richmond. The district courts of the city of New York had existed under various names for many years prior to the constitution of 1894. They are mentioned in the constitution of 1846 as amended in 1869. They formed a part of the judicial system of the state, and a district court justice was not an officer or employé of the city government under the former New York city charter, contained in chapter 95 of the Laws of 1873. The jurisdiction of the district courts was a peculiar one. It was purely a statutory one, and, though the statute prescribed with particularity the district in which an action was to be brought, the jurisdiction of the said court was not limited to cases wherein the defendant was a resident within the territorial jurisdiction of the court at the time of the commencement of the action. In Dammann v. Peterson, 17 Misc. Rep. 369, 40 N. Y. Supp. 70, it was held by this court that the plaintiff in an action in a district court was not required to allege or prove the residence of either or all of the parties within the judicial district, and that the rule laid down in Frees v. Ford, 6 N. Y. 176, and Gilbert v. York, 111 N. Y. 544, 19 N. E. 268, to the effect that all the facts necessary to confer jurisdiction must affirmatively appear in the record, and that this included the fact of the defendant's residence, applied only to county courts, and did not apply to the district courts, because the jurisdiction of the latter was made to depend solely upon the character of the cause of action, and not upon the residence of the parties. If, therefore, it could be held that the municipal court of the city of New York is but a continuation of the district courts of the city of New York, with substantially the same jurisdiction theretofore possessed by said courts, the claim of the appellant would be untenable. But the appellate division, in the Second department, has already held, in Re Schultes, 33 App. Div. 524, 54 N. Y. Supp. 34, that the provisions of the charter of Greater New York relating to the continuance, consolidation, and reorganization, under the name of "The Municipal Court of the City of New York," of the district courts of the city of New York, and the justices' courts of the First, Second, and Third districts of the city of Brooklyn, contemplated, not a mere continuance of the old courts, but the erection of a distinctly new and inferior local court, not of record, having other and greater powers and jurisdiction, etc.

That decision cannot be disregarded by this court, and we feel constrained to follow it. That being so, the next question is whether, in the erection of this distinctly new and inferior local court in the year 1897, due regard was had for the provisions of the constitution of 1894 limiting the powers of the legislature in such a case. The constitution of 1846, as amended and in force prior to January 1, 1895, simply provided (article 6, § 19), "Inferior local courts of civil and criminal jurisdiction may be established by the legislature." It contained no limitation upon the power of the leg-

islature.to prescribe the jurisdiction of a lower court established by it. When the constitution of 1894 was adopted, this provision of the former constitution was amplified and amended, so that it now reads (article 6, § 18):

"Inferior local courts of civil and criminal jurisdiction may be established by the legislature, but no inferior.local court hereafter created shall be a court of record. The legislature shall not hereafter confer upon any inferior or local court of its creation any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon county courts by or under this article."

The present action is brought for the recovery of money only. The next inquiry, then, must be what constitutional limitations are placed by article 6 upon the jurisdiction of county courts in such actions, because whatever limitations are thus imposed must be observed by the legislature in the definition of the jurisdiction of any inferior or local court created after the 31st day of December, 1894.

Section 14, art. 6, provides:

"* * * County courts shall have the powers and jurisdiction they now possess, and also original jurisdiction in actions for the recovery of money only, where the defendants reside in the county, and in which the complaint demands judgment for a sum not exceeding two thousand dollars. The legislature may hereafter enlarge or restrict the jurisdiction of the county courts, provided however that their jurisdiction shall not be so extended as to authorize an action therein for the recovery of money only, in which the sum demanded exceeds two thousand dollars, or in which any person not a resident of the county is a defendant."

Thus, it will be seen that while section 14, art. 6, of the constitution invests the county courts with original jurisdiction in actions for the recovery of money only, the said jurisdiction has been restricted to actions where the defendants reside in the county, and in which plaintiff's demand does not exceed $2,000, and, furthermore, that, while power was conferred upon the legislature to enlarge the jurisdiction of the county courts, such grant of power was also restricted by the proviso that the jurisdiction of said courts shall not be so extended as to authorize an action therein for the recovery of money only in which the sum demanded exceeds $2,000, or in which any person not a resident of the county is a defendant. Moreover, prior to the adoption of the constitution referred to, the jurisdiction of the county courts, under the provisions of the Code of Civil Procedure, in actions for the recovery of money only, was similarly restricted; and consequently the constitutional provision continuing the county courts with the powers and jurisdiction they then possessed conferred no greater or additional powers in actions for the recovery of money only than has already been pointed out. In such an action no county court had jurisdiction over or against a nonresident. From the foregoing considerations, it clearly follows that, just as much as the legislature is restricted in conferring jurisdiction upon the county courts over or against nonresidents in actions for the recovery of money only, it stands restricted in conferring such jurisdiction upon any inferior local court created by it since the adoption of the constitutional provision hereinbefore quoted. And, as an unavoidable corollary, it further follows that although in Irwin v. Railway Co. (Sup.) 57 N. Y. Supp. 21, in which case the

defendant was a domestic corporation and a resident of the county of New York, it has been held by the appellate division, in this department, that the act creating the municipal court of the city of New York was not unconstitutional, as a whole, because the constitutional restriction above referred to related to subject-matter and persons, and not as to locality, it must now be held that in so far as any provision of the act creating the municipal court attempts to confer jurisdiction upon any district court of said municipal court, in an action for money only, over or against a nonresident of the county in which such district court is located, it is unconstitutional and void. Upon the same line of reasoning this court has held, in Rieser v. Parker (decided appellate term, April 21, 1899) 57 N. Y. Supp. 745, that, in so far as the act creating the municipal court attempted to confer jurisdiction upon said court over actions against foreign corporations, it is unconstitutional and void. The residence of the defendant in every case for the recovery of money only brought in the municipal court is therefore a jurisdictional fact, and under the doctrine of Frees v. Ford and Gilbert v. York, supra, the existence of such fact must affirmatively appear whenever the jurisdiction of the court is assailed in that particular. True, under section 2940 of the Code the pleadings may be oral or written, and, if a complaint is oral, the jurisdictional fact relating to defendant's residence may not appear in the same way or manner in which it is to be set forth in a written complaint in a court of record. But in such a case such jurisdictional fact must at least be established by proof. In the case at bar there is neither averment nor proof as to the residence of the defendant, and consequently, under the doctrine of Frees v. Ford and Gilbert v. York, supra, the want of jurisdiction of the district court to render the judgment appealed from is to be presumed, and the objection to such jurisdiction may be raised on appeal for the first time. Even as regards courts of original and general jurisdiction, it has been held, in Robinson v. Navigation Co., 112 N. Y. 315, 19 N. E. 625, that where the action is of such a character that, owing to plaintiffs' nonresidence, the court has no jurisdiction of the subject-matter of the action, the objection to the jurisdiction of the court may be taken at any stage of the action, and that in such a case the court may, ex mero motu, at any time where its attention is called to the fact, refuse to proceed further, and dismiss the action. For a further and full discussion of this question, and others more or less connected therewith, reference may be had to the case of O'Reilly v. Steamboat Co. (decided by this court during the present term of court) 58 N. Y. Supp. 261.

The judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.