PEOPLE ex rel. USOY v. WARING, Mayor, et al.

(Supreme Court, Appellate Division, Fourth Department. May 22, 1900.)

1. MASTER AND SERVANT—AMOUNT OF WAGES—STATUTORY REGULATIONS.
   The employment by city water commissioners of laborers to work for ten hours per day to increase the city's pumping capacity, and to hasten the work, and guard against disastrous consequences which might result from the breakage of a single pump, is within the exception to Laws 1899, c. 567, § 1, providing that eight hours shall constitute a legal day's work for all classes of employés, except that employers may extend the hours of labor in cases of extraordinary emergency caused by damage to life or property.

2. SAME—VIOLATION OF LABOR LAWS.
   Laws 1899, c. 567, § 1, providing that the wages to be paid for a day's work of eight hours shall not be less than the prevailing rate for a day's work in the locality where the work is performed, is not violated by a city's water commissioners employing laborers at a certain rate per hour

which for eight hours does not equal the sum paid laborers by the day in such locality, where such rate per hour is the prevailing wage rate for common laborers in such city.

Certiorari by the people, on relation of Joseph Usoy, to review the action of James H. Waring, as mayor, and others, as the common council, of the city of Olean, in refusing to suspend the members of the board of water commissioners for an alleged violation of the labor law. Dismissed.

This proceeding was originally commenced by a petition addressed to the mayor and common council of the city of Olean, setting forth the facts constituting the alleged violation of section 4 of chapter 415 of the Laws of 1897, as amended by chapter 567 of the Laws of 1899, and praying for the removal of the water commissioners of that city, and for a hearing to that end, of which they should have due notice. In compliance with such prayer, a hearing was subsequently had at a time and place duly appointed, at which the commissioners were present; but, after considering such evidence as was offered by the respective parties, the mayor and common council refused to remove or suspend the commissioners, and therefore this writ was obtained.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Fred L. Eaton, for relator.
Allan J. Hastings, for respondents.

ADAMS, P. J. The facts of this case are virtually undisputed, and, briefly stated, they are as follows: The relator is a common laborer, and as such he was employed to perform labor upon the waterworks system of the city of Olean from June 1st to November 1st, 1899, during which period he worked 10 hours each day, and received therefor at the rate of $1.50 per day. Subsequent to November 1st, he was required to work only 8 hours per day, and his compensation was thereupon reduced to the sum of $1.20. Between June and November, 1899, the water commissioners found it necessary to place a new pump in position, in order to increase the pumping capacity of the system, and guard against the disastrous consequences which might possibly result from any breakage or impairment of the single pump which had theretofore been the sole reliance of the city. A contract was thereupon entered into between the commissioners and the party of whom the pump was purchased, by the terms of which the necessary excavations and foundations for the placing of the pump were to be made and constructed by the commissioners by the 1st day of September, and to accomplish this an extra force of men was employed, and they were required to work 10 hours each day. This requirement, it must be conceded, was a technical violation of the labor law, which provides that "eight hours shall constitute a legal day's work for all classes of employés in this state, except those engaged in farm or domestic services, unless otherwise provided by law" (Laws 1897, c. 415, § 3, as amended by Laws 1899, c. 567, § 1), unless the circumstances under which the labor was performed were such as to bring the respondents within the exception to the inhibition of the statute which permits employers to extend the hours of labor "in cases of extraordinary emergency caused by fire, flood or danger to life or property" (Laws 1899, c. 567, § 1). We are of the opinion that the

emergency which presented itself to the respondents at the time when it is claimed that the law was violated was one which justified them in making extraordinary exertions to complete the work they had undertaken. Olean is a city of considerable size and importance. Its inhabitants were dependent upon the city waterworks for their water supply, and they consumed a million and a quarter gallons of water per day. In order to supply this large quantity of water, it was necessary to keep the one pump then in use in almost continuous operation. Consequently it may be readily seen that had any accident happened to this pump, as was liable to be the case at any time, the most serious consequences must have ensued,—consequences which would have proved disastrous to all classes of the community, rich and poor, employer and employé. Surely, in these circumstances, it was not only proper, but it was clearly the duty of the officers having the matter in charge, to take extraordinary precaution to avert such a calamity, and, inasmuch as it is not pretended that they willfully or intentionally violated the law, we think the case, so far as this particular feature of it is concerned, may be dismissed without further comment.

But it appears that when the time of the relator's labor was reduced from ten to eight hours there was a corresponding reduction of the rate of compensation, and this, it is urged, was a palpable violation of both the letter and the spirit of the statute, which declares that "the wages to be paid for a legal day's work as hereinbefore defined to all classes of such laborers, workmen or mechanics upon all such public work, or upon any material to be used upon or in connection therewith, shall not be less than the prevailing rate for a day's work in the same trade or occupation in the locality within the state where such public work on, about or in connection with which such labor is performed in its final or completed form is to be situated, erected or used." Laws 1899, c. 567, § 1. This contention is based upon the fact, which is made satisfactorily to appear, that the prevailing rate for a day's work by a common laborer in the city of Olean during the time in question was $1.50, and it would therefore demand very serious consideration, were it not for the further fact that during the progress of the hearing the relator's counsel expressly admitted that "it has been the custom of the board of water commissioners since January 1, 1897, to employ common labor by the hour only, and that they paid 15 cents per hour, and if they worked ten hours they got $1.50." With this concession in the case, we do not see how, giving to the statute a reasonable construction, it can be successfully claimed that there has been any violation of the provision to which reference has just been made. The statute does not in terms require that laborers in every instance and in all circumstances shall be employed by the day, neither is there anything in its language which would seem to indicate that such was the intention of the legislature in enacting it. On the contrary, it may be fairly assumed that the statute was passed with a perfect understanding of the well-established fact that all employers, and especially municipalities, frequently have occasion to hire men for but a small fraction of a day. A heavy fall of snow, a break in a sewer, a defect in a sidewalk, and many other

like conditions of municipal affairs, demand constant attention, and the performance of more or less labor, and it would, we think, be most unreasonable in such emergencies to insist that city officials should employ men by the day when but a few hours of service were necessary.

Of course, if it could be shown that the method of hiring adopted by the respondents was a mere evasion, and one which had been resorted to simply to enable them to escape the penalties of the law, quite another question would be presented for our consideration; but there is nothing in the record before us which will fairly justify such an assumption. On the contrary, as has already been stated, it is conceded that it has been customary for the water commissioners to employ laborers by the hour for several years prior to the commencement of this proceeding, and this custom is one which prevails so generally in all municipalities that we are forced to take judicial notice of its existence. When, therefore, this conceded fact is augmented by the unquestioned proof that in 1899 the prevailing wage rate for common labor in the city of Olean was 15 cents per hour, we are unable to discover wherein the relator has any just cause for complaint.

The counsel have injected into the case a constitutional question which, if its consideration were necessary, would be worthy of the most careful attention; but the view we take of the case renders any discussion of that question needless, and we must therefore decline to consider it. Frees v. Ford, 6 N. Y. 176. The sum of our conclusions, therefore, is that the relator's writ should be dismissed; but, inasmuch as the proceeding calls for the construction of a new law, such dismissal should be without costs.

Writ of certiorari dismissed, without costs. All concur.